POPOVICH, Appellant,

v.

SOUTHERN PARK PONTIAC & SUBARU, INC., et al., Appellees.

[Cite as *Popovich v. S. Park Pontiac & Subaru, Inc.* (1997), 123 Ohio App.3d 364.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 C.A. 126.

Decided Sept. 26, 1997.

*Timothy P. Maloney,* for appellant.

*Frederick C. Emmerling,* for appellee William J. Pancake, d.b.a. East Ohio Auto.

*Robert E. Chudakoff,* for appellee Allstate Insurance Company.

---

GENE DONOFRIO, Presiding Judge.

Plaintiff-appellant, John F. Popovich, appeals from a judgment of the Mahoning County Common Pleas Court granting summary judgment in favor of defendants-appellees Allstate Insurance Company and William J. Pancake. Appellant's multicount complaint alleged fraud, deceptive practices and violations of the federal and Ohio odometer rollback and disclosure provisions with regard to his purchase of a used car (which had previously been owned by appellees) from defendant Southern Park Pontiac & Subaru, Inc.

In September 1987, Allstate acquired title to a 1986 Dodge Daytona from its insured, Antonio Lombardi, in New York. When Lombardi transferred title to the vehicle to Allstate, he completed a written odometer statement on the bill of sale in which he certified that the mileage indicated on the vehicle's odometer was 13,149. Lombardi also marked a preprinted statement on the bill of sale in which he certified that the actual mileage was unknown. When Lombardi signed the certificate of title over to Allstate, he left the odometer statement on the certificate blank.

Allstate later obtained a New York salvage certificate for the vehicle. The certificate noted that the mileage on the vehicle was 13,149, that the body on the vehicle was damaged, and that the vehicle was a total loss.

Pancake purchased the damaged vehicle at a New York auction on October 12, 1987. Pancake transported the vehicle to Ohio and obtained an Ohio salvage certificate of title for it on October 14, 1987. This salvage certificate likewise noted that the odometer reading on the vehicle was 13,149.

Pancake sold the vehicle in its damaged condition to Jerry Ridarsky on October 17, 1987. In transferring the vehicle, Pancake certified that " [t]o the best of [his] knowledge, the Odometer reading reflects the actual mileage." The vehicle was subsequently transferred to other owners and eventually was sold by defendant Southern Park to appellant. When appellant purchased the vehicle from Southern Park in June 1990, the mileage registered on the odometer was 29,289.

On April 2, 1993, appellant filed an action against Southern Park alleging fraud, deceptive trade practices and violations of Ohio's odometer rollback and disclosure provisions. On August 24, 1993, appellant filed a second amended complaint adding Allstate and Pancake as defendants and additionally alleging violations of Ohio's Consumer Sales Practices Act on the part of Southern Park and also violations of the Federal Motor Vehicle Information and Cost Savings Act, Section 1981 *et seq.*, Title 15, U.S. Code.

Appellant, Allstate, and Pancake filed motions for summary judgment.

Appellant's case against Allstate and Pancake rested upon the fact that they did not, when transferring the vehicle in question, certify that the actual mileage of the vehicle was unknown as Lombardi did when he transferred the vehicle to Allstate. Appellant also argued that Allstate improperly left the odometer statements blank on a number of instances.

Allstate and Pancake countered all of appellant's contentions by pointing out that there was no evidence that the vehicle did not have 13,149 miles on it when they transferred it. Pancake in particular noted that after he transported the vehicle back to Ohio, it underwent an out-of-state vehicle inspection by an agent of the state. Pancake noted that this inspection revealed no problem with the odometer or its reading, and revealed no evidence that the vehicle had been driven in excess of the 13,149 miles noted on the odometer.

The trial court subsequently overruled appellant's motion for summary judgment and sustained Pancake's and Allstate's motions. Appellant then filed the instant appeal.

Appellant has alleged seven assignments of error. His first assignment of error concerns matters of discovery.

On September 14, 1993, appellant served upon Allstate's statutory agent his first request for discovery.

On February 15, 1994, Allstate filed its own request for discovery. On May 25, 1994, Allstate filed a motion for summary judgment relying in part on the unanswered request for admissions served upon appellant's counsel in February.

On June 14, 1994, appellant filed a certificate of service of his answers to Allstate's request for admissions. On the same day, appellant filed a Civ.R. 37 motion to compel discovery against Allstate and for sanctions.

On June 17, 1994, the trial court entered an order requiring Allstate to comply with discovery. On July 14, 1994, the trial court entered an order deeming Allstate's admissions to have been admitted automatically due to its failure to answer appellant's discovery request of September 14, 1993.

On July 28, 1994, Allstate filed a brief in opposition to appellant's motion for sanctions, asserting that neither its counsel nor its statutory agent was ever served with appellant's September 1993 discovery requests.

On September 7, 1994, appellant re-served his discovery requests upon Allstate's counsel. Allstate filed a notice of service of its responses on December 28, 1994. Appellant immediately filed a motion to strike Allstate's responses as untimely. Thereafter, on January 9, 1995, Allstate filed a motion to vacate the court's order of July 14, 1994, in which it had established Allstate's admissions.

The trial court subsequently overruled appellant's motion to strike Allstate's answers to discovery and vacated its July 14, 1994 order.

■ In his first assignment of error, appellant argues that the trial court abused its discretion in overruling his motion to strike Allstate's late responses to discovery. Appellant cites Civ.R. 36, which provides:

"(A) *Request for Admission.* A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(B) set forth in the request * * *.

"Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within a period designated in the request, not less than twenty-eight days after service thereof or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney. * * *

"(B) *Effect of Admission.* Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing modification of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who

obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits."

Appellant argues that Allstate's answers were untimely and, thus, the matters should be deemed admitted under Civ.R. 36(A). Appellant further argues that Allstate failed to follow the proper procedure under Civ.R. 36(B), which permits withdrawal or amendment of the admissions under certain circumstances.

The docket in this case shows that all parties below were less than diligent in moving discovery along. Numerous continuances were sought and granted by and to all parties. The record further reflects that appellant's responses to Allstate's discovery requests were as untimely as Allstate's. While Civ.R. 36 provides that requests are deemed admitted if not timely answered, it certainly also contemplates relief in appropriate circumstances. Civ.R. 1(B) provides that the Civil Rules "shall be construed and applied to effect *just results* by eliminating delay, unnecessary expense and all other impediments." (Emphasis added.) Based upon the facts of this case, we find that the trial court did not abuse its discretion with regard to discovery.

The first assignment of error is without merit.

In his second assignment of error, appellant argues that the trial court erred in granting summary judgment to appellees on the issue of their alleged violations of Ohio's Odometer Rollback and Disclosure Act.

Appellant argues that Allstate procured an incomplete odometer disclosure statement from Lombardi since Lombardi failed to certify the mileage on the certificate of title. Appellant argues that Allstate also failed to provide a true and complete odometer statement since, in obtaining the New York salvage certificate of title, it failed to certify whether the 13,149 odometer reading was actual or unknown.

With regard to Pancake, appellant argues that Pancake failed to obtain from Allstate a true and complete odometer disclosure as required by 4549.46(B) and 4505.06. Appellant further argues that Pancake violated R.C. 4549.46(A) when he certified, upon transferring the vehicle to Ridarsky, that the mileage reflected on the odometer was actual to the best of his knowledge.

Appellees both respond by first arguing that appellant's claims under the Ohio Odometer Disclosure provisions were time-barred. Appellees rely upon *Baker v. Hurst Buick* (May 2, 1988), Warren App. No. CA86–08–054, unreported, 1988 WL 41486. In *Baker,* the court held that claims of violations of Ohio's odometer disclosure provisions must be brought within two years of the date on which title to the vehicle was acquired.

Secondly, appellees argue that the trial court properly granted summary judgment since there was no evidence that the mileage on the vehicle was

anything other than 13,149 miles as indicated on the vehicle at the time appellees transferred it.

We find that appellees' statute-of-limitations arguments have merit. R.C. 4549.49 provides the applicable statute of limitations for claims arising under R.C. 4549.41 to 4549.46:

"(B) An action to enforce any liability created under sections 4549.41 to 4549.46 of the Revised Code may be brought in a court of common pleas without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises. For the purpose of this section, liability arises when the transferee discovers, or with due diligence should have discovered, the violation."

As the section makes clear, liability arises when the transferee discovers, or with due diligence should have discovered, the alleged violation. Appellant acquired title to the vehicle in June 1990. According to his complaint, appellant was told by a repairman on July 3, 1991, that the vehicle had suffered previous extensive damage. Appellant did not, however, commence a title search on the vehicle until May 1992, which search was not completed until August 10, 1992. Appellees were not added as defendants until August 24, 1993. The question thus becomes whether appellant's claims against appellees arose in June 1990, when he acquired title, in July 1991, when he was told that the vehicle had been heavily damaged, or on August 10, 1992, when the title search was completed.

Appellees argue that the statute began to run when appellant acquired title to the vehicle, relying upon the *Baker* decision. The *Baker* court's rationale was that the statute begins to run when one acquires title because that is when one has a right to commence a title search for the vehicle. However, we find this interpretation to be unduly stringent in that it does not acknowledge the discovery rule set forth in R.C. 4549.49(B). To apply *Baker* would in essence dictate that anyone acquiring title to a used car must immediately commence a title search or be forever barred from asserting a claim. While a prudent used car buyer may want to do that, such a requirement would create a massive burden for registrars of motor vehicles in all states and would serve no useful purpose.

On the other hand, appellant argues that his claims against appellees arose on August 10, 1992, when his title search was completed. Appellant argues that he used due diligence in this regard and that is when he discovered the alleged violations.

While the *Baker* rationale may be too stringent, appellant's is too lenient. Our adoption of appellant's rationale would result in used car buyers sitting on their rights for whatever time they feel is proper or necessary, with the statute

beginning to run only when they get the results of a title search. This result does nothing to further the aim of statutes of limitations, *i.e.*, to prevent the prosecution of stale claims which, due to the passage of time, may be difficult or impossible to defend.

Rather, we find that appellant's claims arose no later than July 3, 1991, the date on which appellant was told that the vehicle had suffered heavy damage. After being given such information, appellant was put on notice that some research was necessary as to prior ownership of the vehicle.

In regard to the discovery rule used in medical malpractice actions, the Ohio Supreme Court has held that it is the constructive knowledge of facts, rather than actual knowledge, which starts the running of the statute. *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 549, 589 N.E.2d 1284, 1287–1288. In addition, the court has held that a plaintiff need not have discovered all of the relevant facts necessary to file a claim in order to trigger the statute. *Id.*, citing *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 133–134, 538 N.E.2d 93, 95–97. Rather, it is a "cognizable event" which triggers the statute and puts the plaintiff on notice to investigate the facts and circumstances relevant to his or her claim in order to pursue the appropriate remedies. *Id.*

These same principles can be utilized when applying the discovery rule found in R.C. 4549.49(B). We thus find that appellant's claims under the odometer disclosure provisions began to run in July 1991. Appellant's failure to file his claims against appellees until August 1993 resulted in these claims being time barred.

Finally, even if this court were to find in favor of appellant on the statute-of-limitations issue, in my judgment appellant still did not make a showing of violations on the part of appellees under R.C. 4549.46. This section provides:

"(A) No transferor shall fail to provide the true and complete odometer disclosures required by section 4505.06 of the Revised Code. The transferor of a motor vehicle is not in violation of this section's provisions requiring a true odometer reading if the odometer reading is incorrect due to a previous owner's violation of any of the provisions contained in sections 4549.42 to 4549.46 of the Revised Code, unless the transferor knows of or recklessly disregards facts indicating the violation.

"(B) No dealer or wholesaler who acquires ownership of a motor vehicle shall accept any written odometer disclosure statement unless the statement is completed as required by section 4505.06 of the Revised Code."

The applicable portion of R.C. 4505.06, as referred to in R.C. 4549.46, provides:

"(C)(1) If the transferor indicates on the certificate of title that the odometer reflects mileage in excess of the designed mechanical limit of the odometer, the

clerk shall enter the phrase 'exceeds mechanical limits' following the mileage designation. If the transferor indicates on the certificate of title that the odometer reading is not the actual mileage, the clerk shall enter the phrase 'nonactual: warning-odometer discrepancy' following the mileage designation. * * *

"The registrar shall prescribe an affidavit in which the transferor shall swear to the true selling price and, except as provided in this division, the true odometer reading of the motor vehicle."

The substantive issue presented by appellant's second assignment of error is this: Where a previous owner certifies that the mileage stated on an odometer is unknown but there is no evidence that the odometer reading is incorrect, does a subsequent owner, upon his transfer of the vehicle to another, give an incomplete statement when he fails to state that the mileage is unknown?

Under the specific facts of this case, I find that this question must be answered in the negative. While there are a number of reported cases construing R.C. 4549.46, the majority of these cases involved situations where it was shown that the odometer statement given by the transferor was incorrect. See *State ex rel. Celebrezze v. Hughes* (1991), 58 Ohio St.3d 273, 569 N.E.2d 1059; *Hughes v. Miller* (1991), 72 Ohio App.3d 633, 595 N.E.2d 960; *Prickett v. Foreign Exchange, Inc.* (1990), 68 Ohio App.3d 236, 587 N.E.2d 972; *Baek v. Cincinnati* (1988), 43 Ohio App.3d 158, 539 N.E.2d 1149.

There are three cases which provide some support for appellant's position, but they are not conclusive. In *Hubbard v. Bob McDorman Chevrolet* (1995), 104 Ohio App.3d 621, 662 N.E.2d 1102, the seller certified, upon transfer of a vehicle to the plaintiff, that the true and accurate mileage on the vehicle was 62,779 when, in fact, the mileage was 63,079. The plaintiff knew about the discrepancy at the time of transfer. The plaintiff later asserted a number of claims against the seller, including one arising under R.C. 4549.46. The seller argued that the incorrect statement was due to a clerical error, and the plaintiff did not allege that the odometer had been tampered with or that it was defective. Nonetheless, the appellate court held that the seller had violated R.C. 4549.46. In so holding, the court stated that the statute imposes strict liability and does not require actual tampering with the odometer but that liability exists simply as a result of nondisclosure of the true mileage.

In *Baker v. Hurst, supra,* a previous owner of a vehicle wrote "unverified" on the title's odometer disclosure space when transferring it to Hurst and disclosed no mileage at all. Hurst later sold the vehicle to Baker and provided an odometer statement which did not state that the mileage was unverified. Baker later sued Hurst as well as the previous owner. While the appellate court found that the claim against the previous owner was time-barred, it noted that the

previous owner had in fact violated R.C. 4549.46 by not disclosing the mileage on the vehicle, regardless of any lack of intent to defraud.

*Mills v. Manse* (1987), 41 Ohio App.3d 361, 535 N.E.2d 1378, dealt with alleged violations of the Federal Motor Vehicle and Cost Savings Act (which was repealed in 1994), rather than R.C. 4549.46. In *Mills*, Martin transferred a vehicle titled in Georgia to Manse, leaving the odometer reading on the title blank. Manse obtained an Ohio certificate of title by submitting an out-of-state vehicle inspection form and a South Carolina odometer disclosure statement. Manse then transferred the vehicle to a third party, from whom Mills later acquired the vehicle.

Upon inspecting the chain of title, Mills found the Georgia title with the blank odometer statement and later filed suit under federal law against Manse. The trial court granted summary judgment in favor of Manse and Mills appealed. The appellate court reversed, noting that the purpose behind the federal Act was to enable subsequent purchasers to know how many miles the vehicle had traveled as a guide to its safety, reliability and value. The court found that there was evidence that Manse had violated the federal Act when transferring the vehicle because he had checked the box on the title indicating that the mileage was accurate. The court found that Manse's acceptance of the incomplete disclosure statement on the Georgia title, coupled with his unqualified certification that the odometer reading was actual, gave rise to a reasonable inference of intent to defraud.

While these cases provide some support for appellant's position, I find that the trial court did not err in the instant case. No party failed to give an odometer statement at the time of transfer and there was no evidence that the 13,149 mileage reading given by Lombardi, Allstate and Pancake was incorrect. The instant case is thus distinguishable from *Baker* and *Mills*, wherein there was no mileage statement given at all upon transfer of the vehicle by prior owners. It is also distinguishable from *Hubbard, supra*, where there was an actual discrepancy between the seller's statement and the odometer reading.

Appellant's second assignment of error is without merit.

■ In the third assignment of error, appellant argues that the trial court erred in granting summary judgment to appellees on appellant's claims of violations of Ohio's Deceptive Trade Practices Act.

Appellant argues that appellees violated R.C. 4165.02(D), (E) and (G) when they failed to provide a true and complete odometer statement upon transferring the vehicle. R.C. 4165.02 provides:

"A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:

"* * * *

"(D) Uses deceptive representations or designations of geographic origin in connection with goods or services;

"(E) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do no have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

"* * * *

"(G) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

There was no evidence that false or deceptive representations were made by appellees since there was no showing that the 13,149 reading was incorrect. In order to prove a violation of R.C. 4165.02, it must be shown that the representation was in fact false or misleading. See *Diamond Co. v. Gentry Acquisition Corp.* (1988), 48 Ohio Misc.2d 1, 531 N.E.2d 777; *Internatl. Diamond Exchange v. U.S. Diamond & Gold Jewelers, Inc.* (1991), 70 Ohio App.3d 667, 591 N.E.2d 881.

Based on the foregoing, I find that the third assignment of error is without merit.

In the fourth assignment of error, appellant argues that the trial court erred in granting summary judgment to appellees on appellant's breach-of-warranty claims. Appellant argues that his claims in this regard were based on tort rather than contract principles, and that privity between the parties was thus not a necessary element in establishing this claim.

Appellant's argument in this regard is not clear. Appellant appears to be arguing that appellees' failure to provide a true and complete odometer disclosure not only constituted a violation of statutory law but also constituted a separate tort.

There is no relevant case law in support of this argument. We therefore find it to be without merit.

In the fifth assignment of error, appellant argues that the trial court erred in granting summary judgment to appellees on appellant's claims of fraud.

In order to prevail on his claims of fraud, appellant was required to show that appellees (1) made actual or implied false representations of material fact, (2) with knowledge of their falsity, (3) with intent to mislead, (4) which appellant relied upon to his detriment. See *Domo v. Stouffer* (1989), 64 Ohio App.3d 43, 51, 580 N.E.2d 788, 793.

Appellant presented no evidence that appellees misrepresented material facts with knowledge of their falsity. This is particularly so with regard to Pancake, who merely certified that the mileage on the vehicle, to the best of his knowledge, was 13,149. With regard to Allstate, there was no evidence that the vehicle did not have 13,149 miles on it when Allstate transferred it. While appellant alleged that Allstate should have stated that the mileage was "unknown," there was no evidence that Allstate did not have actual knowledge of the mileage or that the 13,149 reading was not actual. Finally, there was no evidence of intent to defraud on the part of appellees.

The fifth assignment of error is without merit.

█ In the sixth assignment of error, appellant argues that the trial court erred in granting summary judgment to appellees on appellant's claims under the Federal Motor Vehicle Information and Cost Savings Act, Section 1981 *et seq.,* Title 15, U.S. Code.

It is first noted that the federal Act was repealed in 1994. However, Section 1988 provided:

"(a) * * * The Secretary shall prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:

"(1) Disclosure of the cumulative mileage registered on the odometer.

"(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled. * * *

"(b) No transferor shall violate any rule prescribed under this section or give a false statement to a transferee in making any disclosure required by such rule.

"(c) No transferee who, for purposes of resale, acquires ownership of a motor vehicle shall accept any written disclosure required by any rule prescribed under this section if such disclosure is incomplete."

It is clear from a reading of the statute that, in order to establish a violation under this section, appellant was required to show that appellees failed to certify that the mileage was unknown if the odometer reading was known by appellees to be different from the actual mileage on the car. It has been held that, in order to establish a claim under Section 1988, a plaintiff was required to show that the mileage on the vehicle was different from what was shown on the odometer. See *Bryant v. Thomas* (D.Neb. 1978), 461 F.Supp. 613; *Delay v. Hearn Ford* (D.S.C. 1974), 373 F.Supp. 791. Further, an intent to defraud must be shown. See *Tye v. Spitzer–Dodge* (S.D.Ohio 1980), 499 F.Supp. 687; *Augusta v. Marshall Motor Co.*

(N.D.Ohio 1977), 453 F.Supp. 912, affirmed, 614 F.2d 1085; *Clayton v. McCary* (N.D.Ohio 1976), 426 F.Supp. 248.

Since appellant failed to produce any evidence that the odometer reading did not reflect the actual mileage, the sixth assignment of error is without merit.

In the seventh and final assignment of error, appellant reiterates the arguments made in the first six assignments and argues that the trial court erred in granting summary judgment to appellees on all claims since appellees did not certify that the mileage was unknown as Lombardi had done on his mileage disclosure statement.

For the same reasons as set forth above, the seventh assignment of error is without merit.

The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

VUKOVICH and WAITE, JJ., concur separately.

VUKOVICH, Judge, concurring.

I concur with the majority's finding that appellant's claim was untimely filed and was thus barred by the statute of limitations. However, I write separately to express my doubts as to the lead opinion's rationale excusing Allstate from liability for failure to certify the actual mileage on the odometer.

The action herein was dismissed on a summary judgment motion rendered in Allstate's favor. The standard for reviewing a summary judgment motion is as follows:

"A reviewing court must follow the standard set forth in Civ.R. 56(C) when it reviews a summary judgment. Civ.R. 56(C) provides that a summary judgment shall be rendered if the evidentiary materials and stipulations 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Civ.R. 56(C) further provides that:

" 'A summary judgment shall not be rendered unless it appears from [the evidentiary materials and stipulations] and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.' " *Jackson v. Lou Cohen, Inc.* (1992), 84 Ohio App.3d 693, 696, 618 N.E.2d 193, 196.

I find that Allstate's failure to disclose the true and accurate odometer reading is a genuine issue of material fact. Competent evidence was present in the record to indicate that Allstate did not report the true and accurate reading on

the odometer as is required by statute. Thus, in my opinion, summary judgment was improperly granted to Allstate.

R.C. 4505.06(B)(2) provided:

"Each certificate of title shall also contain * * * at least the following statements: * * * I (we) certify that: . . . . . (1) to the best of my (our) knowledge, the odometer reading reflects the actual mileage; . . . . . (2) the odometer reading reflects mileage in excess of the designed mechanical limit 99,999 miles; . . . . . [or] (3) to the best of my (our) knowledge, the odometer reading is not the actual mileage and should not be relied upon * * * [and] that, while in my (our) possession: . . . . . (1) the odometer of this vehicle was not altered, set back, or disconnected; . . . . . [or] (2) the odometer of this vehicle was repaired or replaced."[1]

Clearly the legislature intended that a certificate of title be a complete report of the title of a motor vehicle upon which any person subsequently purchasing the vehicle has a right to rely. *Stackhouse Oldsmobile, Inc. v. Petry* (1967), 12 Ohio App.2d 68, 78, 41 O.O.2d 122, 128–129, 231 N.E.2d 71, 78.

In the case at bar Allstate received a bill of sale from Lombardi in which he certified that the actual mileage was unknown. Allstate had actual knowledge that the true mileage was unverifiable and hence had a duty to provide that information in the appropriate area of the certificate of title. Having failed to do so, Allstate violated the express language of R.C. 4505.06 and should be held accountable for its omission. However, because the majority has determined that appellant's claim has failed to meet the requirements of the statute of limitations, I concur.

WAITE, J., concurs with the foregoing concurring opinion.

---

1. This is the version of statute in effect on Oct. 14, 1987 when Pancake acquired title to the car from Allstate. 142 Ohio Laws, Part I, 62. It has since been amended.