## OWENS v. THE VILLAGE OF WILMINGTON.

*Contracts—Services of architect—Plans accepted, but bids exceed funds available—Bequest for village library building—Provisions of will read into contract—Validity of architect's contract—Excessive cost of building—Approval of plans by inspector of workshops and factories—Certificate that public funds available—Section 3806, General Code—Liability of village to architect after discharge.*

By the terms of a will defendant village was to construct a library "at a cost as nearly as practicable of $25,000," to be paid for out of testator's estate. In attempting to carry out the terms of the will plaintiff contracted to prepare plans and specifications for the building, for which he was to receive a certain per cent., based on the cost of the building. Plans were prepared and accepted by the village. The bids being greatly in excess of the amount provided for in the will, plaintiff offered to change the plans to come within the limitation. The village refused to so proceed and employed another architect to prepare plans, by which the building was erected. In an action by plaintiff for services rendered under the contract, *Held*:

1. The limitation of the cost as provided in the will is to be read into the contract.

2. The contract is not invalidated by the fact that the cost of the building as planned by plaintiff would exceed the limitation prescribed in the will.

3. The approval of the plans and specifications by the inspector of workshops and factories is not necessary to validate the contract.

4. As no part of the cost was to be paid from funds raised by general taxes, a certificate showing that the money was in the treasury to the credit of the particular fund, as required by Section 3806, General Code, is not necessary.

5. The village cannot avail itself of the defense that it did not use the plans and received no benefits therefrom.

(Decided November 25, 1921.)

ERROR: Court of Appeals for Clinton county.

*Mr. W. L. Miller,* for plaintiff in error.
*Mr. I. Q. Jordan* and *Mr. G. P. Thorpe,* for defendant in error.

BUCHWALTER, J. Plaintiff in error, Harley W. Owens, who was plaintiff below, brought an action against the village of Wilmington under an alleged contract for services rendered by him to the village, in the preparation of plans and specifications for the construction of a building to be erected by the village, and which was to be known as the "Walker Memorial Library Building." The compensation was to be five per cent., based on the cost of the building, three per cent. when the cost of the building was ascertained by bids and two per cent. as the building was being constructed and finished. The improvement was to be made in accordance with a provision in the will of Samuel Walker. The portion of Item Three containing the provision is as follows:

"It [the Village] shall purchase in said Village of Wilmington a suitable site for a library and Reading Rooms building and locate a building thereon at a cost as nearly as practicable of $25,000.00, suitably constructed for said purpose and also business rooms and office which shall be rented and rents applied to keeping said building in repair and paying for care of same, and any sum which remains over and above the cost of the site purchased, and the building erected thereon arising from the proceeds of the sale of my real estate or any surplus of my personal property shall be applied to the purchase of books, maps, papers, manuscripts or such purpose as may best promote the interests and utility of said Library and Reading Rooms."

The contract as entered into between the parties was expected to carry into effect this provision of the will, and refers to the building by name, as it was only in reference to expenditure from this fund that the contract was made. The limitation provided in the will that the building should be "at a cost as nearly as practicable of $25,000.00" will, therefore, be read into the contract. Both parties knew, or are presumed to have known, the amount that the village was authorized to expend in the construction of the building, as provided in Item 3 of the will. The provisions of the contract as to the payments would, therefore, be three per cent. when the cost of the building was ascertained by bids (which came within the limitation of $25,000.00, as provided in Item Three of the will), and two per cent. as the building is being constructed and completed.

Plans and specifications were prepared, and the village, by the contract, agreed to accept and receive bids, and did advertise for bids. Upon opening the bids, it was found that the cost of the improvement was greatly in excess of the amount provided for in the will.

Plaintiff claims that the plans could have been changed to bring the improvement within the limitation, and offers testimony that he proffered to make such changes. The council of the village, however, refused to proceed, and employed another architect to prepare the plans for the building, which was finally erected.

It could not be accurately known until bids were received just what the cost of the improvement as planned would be. As council refused to deal further with the plaintiff, after he had prepared the

plans and specifications, which the members of council, as trustees of such fund, accepted, the village breached the contract. The maximum damage to plaintiff for the drawing of the plans and specifications would not exceed three per cent. of the maximum amount stipulated for the improvement in such will. In so far as the two per cent. for supervising the construction of the building was concerned, as no building was erected, under these plans, and no supervision required, the damage would be merely nominal. There was no evidence presented showing any damage to plaintiff on account of failure to have supervision of erection of such building.

One of the defenses set up in the answer was that the plans and specifications did not substantially comply with the provisions of Item 3 of the will. It is true that when bids were received it was found that the building as planned would be more expensive than contemplated, but that was an error which could have been corrected, had plaintiff been given an opportunity so to do. However, that does not invalidate this contract made with the village. It would only affect the amount which plaintiff could recover for his services under the contract.

The answer also sets up the defense that the plans and specifications had not been approved by the inspector of workshops and factories, and that therefore no valid contract was made for the construction of the building. Undoubtedly the approval of the department of workshops and factories would be required before the actual erection work proceeded, however, this was not a necessary requirement up to the time of the breach by the village, after the village had by contract agreed to accept and receive the plans so submitted by the plaintiff.

The contention is also advanced that the village is not liable because it did not use the plans and received no benefits therefrom. However, having ordered the architect to proceed with the preparation of the plans, and having by its contract accepted them, and advertised for bids, the village cannot now complain of the contract because no benefit was received. The work on the plans had been done, and the village had agreed to and did accept them, thereby making a contract which was valid and binding as between the parties.

In view of our holding that the provisions of the will are to be read into this contract, and that the fund therein stipulated was that from which the cost of the improvement was to be paid, the contract is not invalidated by the terms of the Burns law, Section 3806, General Code of Ohio. The cost of the building was to be paid out of this specific fund, held for a specified purpose, and no part of the cost was to be paid from any fund raised by general taxes, so that no certificate was necessary showing that the money required to carry out the contract was in the treasury to the credit of this particular fund, not appropriated for any other purpose. *Kerr v. Bellefontaine*, 59 Ohio St., 446; and *Comstock v. Nelsonville*, 61 Ohio St., 288.

For the reasons above stated it will be necessary for this case to be sent back for trial to determine the damage sustained by plaintiff because of the breach.

The judgment of the court of common pleas will be reversed, and a new trial granted.

*Judgment reversed.*

HAMILTON, P. J., and CUSHING, J., concur.